[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff, Thomas Cox d.b.a. Thomas Cox Construction, brought this action in nine counts against the defendants, Michael Dauria, ECOS Corporation, Mountain Properties Corporation, and the Pequabuck Ridge Corporation to recover damages for site work services rendered to ECOS in 1986 and 1987.
The underlying causes of action against ECOS, based on express and implied contract and quantum meruit, are brought in the First, Second, and Third Counts. The remaining causes of action, which depend on a favorable result in one of the first three counts, assert liability against Dauria, the principal of ECOS, and related corporations. The actions against Dauria, Mountain Properties, and the Pequabuck Ridge Corporation based on "agency or instrumentality" are contained in the Second Count; the action based on "identity" is contained in the Ninth Count. The action against Dauria based on quantum meruit and/or implied contract is contained in the Fourth Count. The action against Mountain Properties on the same basis is contained in the Fifth Count.
An action based on fraudulent conveyance against Dauria d.b.a. Sunmeadow Ventures is contained in the Sixth Count, and against Mountain Properties, in the Seventh Count. A similar action against Pequabuck Ridge Corporation is alleged in the Eight Count. The defendants have counterclaimed essentially on a theory of unworkmanlike performance.
Based on a preponderance of the evidence introduced at trial, the court finds the following material facts established: Michael Dauria is president and sole stockholder of ECOS Construction. He controls two other corporations, as well, Mountain Properties Corporation and Pequabuck Ridge Corporation. Since mid-1986, ECOS carried on construction activities in a Berlin subdivision known as Sunmeadow Homes.
The plaintiff Tom Cox conducts a sole proprietorship known as Tom Cox Construction. During 1985 and 1986, Cox performed some work for ECOS on the Sunmeadow Project, consisting of carpentry, trench work and installation of the sewer and water mains in Sunmeadow Drive. The parties did not CT Page 9585 have any written contract but had agreed on a compensation rate for Cox's work which varied according to the nature of work being performed. Cox was paid at the agreed rate if he produced the work; there was no compensation if work was not produced. Cox kept virtually no business records of his own. He was paid in full for all services performed before October 20, 1986.
In October, 1986, Cox began an offsite sewer project for ECOS for the purpose of connecting Sunmeadow Drive to an existing sewer on Clark Drive, some 2000 feet away. Cox worked on this project with a small crew during the latter part of October, as well as during November, and December of 1986 and completed most of it by January, 1987. Cox also did some carpentry work on Sunmeadow houses. From early January on, Cox worked alone for the most part, although he was assisted from time to time by ECOS employees. Although Cox, himself, did not keep accurate and complete records of his work, several ECOS employees did keep records of Cox's activities on the job site.
After the October, 1986-reconciliation of accounts, the business relationship of the two parties continued on the same basis. That is, Cox was to be paid only for productive hours on the job site. Although Cox's hourly rate was $20 per hour for carpentry work, the parties did not reach a definite agreement as to rates for Cox's continued work or for the heavy equipment to be brought to the site. A supervisory fee for Cox as to some of the lots was agreed on by the parties but the terms thereof were never defined precisely. During the course of the work, ECOS became dissatisfied with the Cox's lack of dependability and the adequacy of his efforts. The reasonableness of the rates charged by Cox for his own work and for the equipment which he furnished was not satisfactorily established by the evidence produced at trial. Further, the accuracy and reasonableness of the hours claimed to have been spent by Cox on the job were not proven by credible evidence.
Based on the records kept by ECOS as to productive hours spent, Cox was paid the sum of $37,500 by ECOS for his work after October 20, 1986. Although Cox now claims that amount is inadequate to compensate him fully, the court finds the amount to be fair compensation for his work based on the credible evidence adduced at trial. Cox claimed compensation due amounting to $99,612. for the period from October 20, 1986 to June 1, 1987 based on 1359 hours of work. (Based on plaintiff's testimony that $34,800 has been paid, plaintiff contends that CT Page 9586 he is owed $67,092.45. Defendants, however, claim that $37,500 has been paid.) Cox, however, did not produce adequate records or other persuasive evidence to substantiate the hours claimed. During that period, he also worked and was paid by SNETCO and CL P for work involving his heavy equipment. The bill for $99,612. was sent to ECOS some six weeks after Cox's last day on the job which was also some six months after the bulk of the work had been completed. Cox acknowledged that he compiled this bill as a means of starting a "discussion" with Dauria, the principal of ECOS.
The work performed during November and December was erratic and inconsistent. Little time was actually spent on the site by Cox during the months of January, February and March. Cox removed all his heavy equipment from the site on March 20, 1987.
ECOS counterclaimed based on allegations that Cox's failure to perform adequately necessitated substantial corrective work. Those claims essentially involved an episode concerning a frozen pipe, an accidental injury to a worker, and an improperly graded road as well as general claims concerning poor workmanship in the sewer construction project. Although there was credible evidence of poor workmanship on Cox's part, the evidence in support of the counterclaim failed to establish a causal relationship between Cox's unworkmanlike performance and the damage sustained and, in fact, the extent of the damage itself.
In order to recover on his claim for compensation for services rendered to ECOS, the plaintiff bears the burden of proving by a preponderance of the evidence the essential allegations of his cause of action. Nikitiuk v. Pishtey,153 Conn. 545,553 (1966). Whether the plaintiff sustains this burden is a question of fact for the trier. Presnick v. DeRosa, 12 Conn. App. 554, 557 (1987).
Where the agreement between the parties does not establish with precision a price, which is the case here, the party performing is entitled to a reasonable charge for such services. J. D. Kasper Associates v. Merrimac Associates, Inc., 37 Conn. Sup. 712, 716 (1981); H. B. Toms Tree Surgery, Inc. v. Brant, 187 Conn. 343, 347 (1982). However, ". . . [t]here can be no recovery for the reasonable value of services rendered unless evidence has been introduced as to what that CT Page 9587 reasonable value was." Braithwaite v. Lee, 125 Conn. 10, 13-14
(1938). "In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract . . . or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit . . . when warranted by the facts of the case." Boland v. Catalano, 202 Conn. 333, 341
(1987). Further, any damages claimed must be proven with reasonable certainty. Braithwaite, supra at 14. Freda v. Smith,142 Conn. 126, 136 (1955). The plaintiff failed to establish with credibility by a preponderance of the evidence either the reasonable rate for his work or the reasonable value of his services.
Based on the evidence presented at trial, the plaintiff failed to establish the essential allegations of any of the underlying causes of action pleaded in the first three counts of his complaint directed at ECOS Corporation based on alternate theories of express contract, implied contract and quantum meruit. Given those findings and conclusions, it is not necessary for the court to decide the additional issues pleaded by plaintiff relating to liability of Dauria or other corporate entities owned or controlled by Dauria.
For the foregoing reasons, judgment is entered on the complaint in favor of the defendants. Further, because the defendants failed to establish the essential elements of their counterclaim against Cox, judgment is entered on the counterclaim in favor of the plaintiff.
Barry R. Schaller, J.